UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VICTOR JULIAN TURNER,

          Plaintiff,

v.

TORI RALKEY, et al.,

          Defendants.

CASE NO. 3:20-cv-05472-TL-DWC

ORDER ADOPTING REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation of the Honorable Judge David W. Christel, United States Magistrate Judge, on cross-motions for summary judgment (Dkt. No. 94), *pro se* Plaintiff Mikailah Kay Sweetgrass-Turner's[1] objections to the Report and Recommendation (Dkt. No. 95), and Defendants' response to the objections (Dkt. No. 96). Plaintiff's claims arise out of her treatment as a transgender prisoner. Judge Christel recommends granting summary judgment in favor of Defendants and denying Plaintiff's motion.

---

[1] Mikailah Kay Sweetgrass-Turner is Plaintiff's legal name. Dkt. No. 75-1 at 387. The case caption reflects Plaintiff's commitment name because that is the name to which all of her correspondence must be directed while she is incarcerated. Dkt. No. 10 at 1.

ORDER ADOPTING REPORT AND RECOMMENDATION - 1

Dkt. No. 94 at 36. Having reviewed the Report and Recommendation, Plaintiff's objections, Defendants' response to the objections, and the remaining record, the Court ADOPTS the Report and Recommendation and OVERRULES the objections.

### I. LEGAL STANDARDS

#### A. Review of a Report and Recommendation

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "De novo review means that the reviewing court does not defer to the lower court's ruling but freely considers the matter anew, as if no decision had been rendered below." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (citation and quotation omitted). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2).

#### B. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. at 248; *see also McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage, "[s]tripped to its core"). Additionally, "all justifiable inferences" must be drawn in the non-movant's favor (*id*. at 255 (citing *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 158–59 (1970))), "only in the sense that, where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig*., 627 F.3d 376, 387 (9th Cir. 2010). The non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.' " *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986); *see also Parth v. Pomona Valley Hosp. Med. Ctr*., 630 F.3d 794, 798, 805 (9th Cir. 2010), *cert. denied*, 563 U.S. 1008, (affirming grant of summary judgment against appellant who had "failed to adduce any evidence or authority to support her claim").

## II. BACKGROUND

The background of this case is detailed in the Report and Recommendation. *See* Dkt. No. 94 at 2–9. In brief: Plaintiff is a transgender woman imprisoned at the Stafford Creek Corrections Center (SCCC), under the custody of the Washington State Department of Corrections (DOC). Dkt. No. 56 ¶¶ 1, 4, 29 (verified complaint). She alleges, among other things, that: she was forced to disclose her transgender identity to a mental health professional in the prison when placed in a cell with a Muslim inmate, which caused her to fear for her safety (Dkt. No. 56 ¶¶ 22–25); she had been informed that to remain housed in general population at SCCC, she would need to submit a written statement indicating that she felt safe there, and she submitted such a statement because she was "never informed of housing alternatives, such as a policy allowing for the possibility of being housed at a female prison" (*id.* ¶ 28);[2] and she is classified as being at high risk of sexual victimization due to "extensive childhood sexual, physical, and emotional abuse" yet was once assigned to be celled with a convicted sex-offender (*id.* ¶ 32).

The crux of the complaint centers on Plaintiff's housing assignments, but she alleges other forms of mistreatment by prison officials such as: misgendering by Defendant SCCC Correctional Officer Daniel Downing (*id.* ¶¶ 49–55), a refusal to collect an emergency grievance by another officer who did not "care about tranny issues" (*id.* ¶¶ 59–60), and a denial of "cleaning supplies, clean clothing, and showers" for nearly a week (*id.* ¶ 62). Plaintiff describes filing numerous grievances about housing assignments or placement in administrative segregation (*see id.* ¶¶ 33, 34, 43, 83, 97, 103) along with kites about related issues (*see id.* ¶¶ 82, 84, 87, 88, 91, 92, 93, 99, 100, 101, 105), and other requests for review or assistance, including

---

[2] Plaintiff received hormone replacement therapy and female undergarments upon request and completed the gender dysphoria protocol at SCCC. Dkt. No. 56 ¶¶ 27–29, 73; Dkt. No. 94 at 4.

emergency mental health interventions (*id.* ¶¶ 72, 77), letters to "the office of corrections ombuds" (*id.* ¶¶ 78, 90), and a Prison Rape Elimination Act ("PREA") complaint. *Id.* ¶ 53. She describes withdrawing at least two of these grievances in good faith because a staff member offered to resolve the issue but didn't actually do so. *See id.* ¶¶ 34–35, 37–40. On October 25, 2019, Plaintiff made a request to be housed with a specific cellmate of her choice—a person with whom she felt comfortable—but Defendant Tori Ralkey denied the request based on "confidential PREA related information." *Id.* ¶¶ 41–42. Plaintiff filed a grievance related to this denial, which she appealed "to level 3" and then filed a public records request seeking "confidential informant (CI) records and emails regarding [her] request for a cell move . . . that was denied by staff Tori Ralkey due to PREA concerns." *Id.* ¶¶ 43–47; Dkt. No. 75-1 at 404. Plaintiff also alleges that while she was housed in administrative segregation for eighty-one days (Dkt. No. 94 at 21–22 (citing Dkt. No. 79-1 at 30–38)), she was subjected to showering in view of male prisoners (Dkt. No. 56 ¶ 99).

### III. Discussion

#### A. Objection 1: Application of the Summary Judgment Legal Standard

First, Plaintiff takes issue with how the Magistrate Judge assessed the parties' cross motions for summary judgment, alleging that he drew "reasonable inferences" in Defendants' favor and omitted "material facts critical to the determination of genuine issues." Dkt. No. 95 at 9–10. The Magistrate Judge provided cites to the record for each fact stated. *See* Dkt. No. 94 at 3–9. Plaintiff's objection is deficient as she neither specifies any inferences that incorrectly favored Defendants' position nor provides any examples of material facts that were omitted or not properly considered.

//

//

B.     **Objection 2: Eighth Amendment Claims against Defendants Ralkey and Thornhill**

Second, Plaintiff objects to the Magistrate Judge's characterization of her Eighth Amendment claims against Defendants Ralkey and Thornhill regarding the cellmates with whom she was housed. The Magistrate Judge summarized Plaintiff's allegations as a failure "to protect her from cellmates she considered unsafe and [a denial of] housing with a cellmate of her choice with whom she felt comfortable." Dkt. No. 94 at 15. Plaintiff explains that she was not claiming a constitutional right to housing of her choice. Rather, she alleges that "[T]ori Ralkey while executing her official [d]uty abused her position as an operative of a state agency by fabricating the existence of confidential information to arbitrarily prevent Plaintiff from utilizing prison regulations to find a safe environment in which to live without fear of being sexually abused, verbally mocked and [harassed], or pressured for sexual favors." Dkt. No. 95 at 11.

The Eighth Amendment not only protects prisoners from being subjected to cruel and unusual punishment, it imposes an affirmative duty on prison officials to "provide humane conditions of confinement" through provision of "adequate food, clothing, shelter, and medical care" and "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 396 F.3d 732, 744 (9th Cir. 2002)). The prisoner must show not only (1) that they are "incarcerated under conditions posing a substantial risk of serious harm," but also (2) that the prison official had "punitive intent" because they were deliberately indifferent to the inmate's health or safety. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)), *overruled on other grounds*, *Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). In other words, "an official must have actual knowledge of an excessive risk to inmate health or safety and must deliberatively disregard that risk." *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000) (citing *Farmer*, 511 U.S. at 837).

As explained by the Magistrate Judge, Plaintiff failed to provide evidence demonstrating that Defendants both knew of and disregarded risk to Plaintiff's safety when making several housing assignments in 2019. Dkt. No. 94 at 18. While there were factual disputes raised regarding Defendants' knowledge of her safety concerns, Plaintiff did not show that she suffered more than a "generalized fear of harm" due to those assignments. *Id*. The standard for Eighth Amendment violations is high: it requires "conditions posing a substantial risk of serious harm," *Clouthier*, 591 F.3d at 1242, and a mere "generalized fear of harm" does not meet that high standard.

Turning to Plaintiff's allegations regarding denial of an affirmative housing request she made to be housed with a cellmate of her choosing, Plaintiff alleges that the confidential PREA information that led to her housing assignment request being denied was "fabricated." Dkt. No. 95 at 5, 11. The Court is not satisfied that Defendants had a reasonable basis to deny Plaintiff's housing request based on "confidential information" without further detail about the nature of the information that decision was based on. *Compare* Dkt. No. 56 ¶ 47 (complaint alleging that "no confidential PREA information was ever filed") *with* Dkt. No. 70 ¶ 47 (answer admitting this allegation) *and* Dkt. No. 95 at 25 (Defendants' response to a request for production that Plaintiff assumes "that confidential information must necessarily be contained in 'documents' " annotated with Plaintiff's handwritten note "according to policy it does"). But regardless of whether there was a reasonable basis to deny her housing request, Plaintiff has failed to state an Eighth Amendment violation on this basis. A denial of a request to be housed with a particular cellmate does not amount to deliberate disregard of an excessive risk to inmate health and safety.

C.     **Objection 3: Section 1983 Claim Regarding Use of Male Pronouns**

Third, Plaintiff objects to the Magistrate Judge's characterization and evaluation of her Section 1983 Eighth Amendment and Fourteenth Amendment equal protection claims against Defendant Downing for using male pronouns when addressing her. Dkt. No. 95 at 16–18. Under Ninth Circuit precedent regarding the Eighth and Fourteenth Amendments, verbal harassment

alone is generally insufficient to establish a violation. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment"); *Patrick v. Martin*, 402 F. App'x 284, 285 (9th Cir. Nov. 2, 2010) (affirming dismissal of prisoner's Section 1983 verbal sexual harassment claims based on the Eighth and Fourteenth Amendments). Post-PREA implementation, Ninth Circuit precedent has remained the same. *See Lund v. California*, No. C20-17133, 2021 WL 4958985, at *2 (9th Cir. Oct. 26, 2021) (affirming dismissal of prisoner's Section 1983 claims based on the Eighth and Fourteenth Amendments in part because "verbal harassment generally is not sufficient to state a constitutional deprivation") (citation omitted), *cert. denied sub nom. Lund v. Datzman*, 142 S. Ct. 2870 (2022); *Garbarini v. Ulit*, 731 F. App'x 708, 709 (9th Cir. 2018) (" 'verbal harassment generally does not violate the Eighth Amendment' " ) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *opinion amended on other grounds on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998)); *Hill v. Rowley*, 658 F. App'x 840, 840–41 (9th Cir. 2016) (dismissing prisoner's failure-to-protect and equal protection claims based on defendant's comments because "verbal harassment is insufficient to state a constitutional deprivation under § 1983").

Plaintiff asserts that her argument focuses on being misgendered, and she cites two cases from the Southern District of Illinois discussing the harm that comes with misgendering. Dkt. No. 95 at 17–18; *see Tay v. Dennison*, 457 F. Supp. 3d 657 (S.D. Ill. 2020); *Hampton v. Baldwin*, No. C18-550, 2018 WL 5830730, *1 (S.D. Ill. Nov. 7, 2018). The Court understands that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating." *Hampton*, 2018 WL 5830730 at *2. However, in those cases, the court found constitutional violations because the misgendering—*along with other harassment*—was severe and pervasive. In *Tay*, the court stated, "[t]he evidence establishes that Plaintiff has been subject to frequent and ongoing harassment based on her gender identity . . . . *In addition*, correctional and medical staff constantly misgender Plaintiff, referring to her as 'mister' and using male pronouns even though they are aware that she is a transgender woman." 457 F. Supp. 3d at 683 (emphasis added). Under those circumstances, the *Tay* court held "[t]he sexual harassment that

Plaintiff experiences is so severe and pervasive that it rises to the level of a constitutional violation." *Id.* In partially granting a preliminary injunction motion, the *Hampton* court found "multiple situations where IDOC staff forced [the plaintiff] to engage in sexual acts with other inmates or with the staff themselves, and she complained of being groped and harassed daily by inmates." 2018 WL 5830730, at *12, *17.

In contrast here, the only discriminatory conduct Plaintiff alleges by Defendant Downing is his use of male titles and pronouns to refer to Plaintiff during two related interactions. The Complaint states that Defendant Downing on one occasion referred to Plaintiff as "sir" despite her attempts to correct him and then misgendered Plaintiff in the narrative of an infraction notice related to that interaction.[3] Dkt. No. 56 ¶¶ 49–52. Even assuming all the facts as pleaded by Plaintiff,[4] the situation presented is a far cry from the situations in *Tay* and *Hampton*. This is not meant in any way to minimize the disrespectful and degrading behavior by Defendant Downing.[5] However, in applying the law as it exists to the facts pleaded by Plaintiff, these two related incidents in and of themselves are insufficient to establish a constitutional violation.

### D.   Objection 4: Due Process Claims Regarding Administrative Segregation

Fourth, Plaintiff objects to the Magistrate Judge's recommendation to dismiss her Fourteenth Amendment due process claim regarding an eighty-one day period when she was housed in administrative segregation. Dkt. No. 95 at 18–20; Dkt. No. 94 at 31. The Magistrate Judge was unable to find that the hardships Plaintiff experienced in administrative segregation due to issues unique to her transgender status—specifically, a lack of privacy while showering—were sufficiently atypical to create a liberty interest. Dkt. No. 94 at 31. Plaintiff explains that

---

[3] During the conversation where Plaintiff alleges Defendant Downing insisted on referring to her as "sir," Defendant Downing questioned Plaintiff about a ring she was wearing. The infraction report in which Defendant Downing misgendered Plaintiff is related to her possession of that ring. Dkt. No. 56 ¶¶ 49–52; Dkt. No. 75-1 at 415.

[4] The Department of Corrections' Investigation Report reflects that another incarcerated person overheard (1) Plaintiff requesting that Defendant Downing use female pronouns and (2) Defendant Downing telling Plaintiff, "[y]ou were born a man and I will address you as such." Dkt. No. 82-1 at 8. Defendant Downing claims he did not know that Plaintiff wanted to be referred to by female pronouns. Dkt. No. 78 at 19 (citing Dkt. No. 82-2).

[5] Assuming the truth of Plaintiff's assertions, Defendants admit that "such language would be inconsistent with Department policy and is offensive." Dkt. No. 78 at 19.

transgender prisoners in restrictive housing lack access to the same accommodations provided for transgender prisoners in the general population (being allowed to shower separately from other prisoners in showers "specially constructed to accom[m]odate their unique physiology." Dkt. No. 95 at 19–20. She alleges being forced to shower "in full view of male inmates" while housed in administrative segregation. Dkt. No. 75 at 30.

Even if a protected liberty interest is identified, a plaintiff must still demonstrate a denial of due process. *Cf. Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003), *cert. denied sub nom. Serrano v. Hamlet*, 543 U.S. 825 (2004) (prisoner with disability identified a protected liberty interest in being denied wheelchair access in administrative segregation but was still required to demonstrate a denial of due process). Here, while Plaintiff may have alleged deprivation of a protected liberty interest with these allegations, she fails to show this deprivation was made without due process. Indeed, Plaintiff does not contest that she was provided due process (*see* Dkt. No. 95) while in administrative segregation. As the Magistrate Judge found, Plaintiff received five reviews of her administrative segregation placements and was even able to appeal her placement in administrative segregation. Dkt. No. 94 at 32.

### E. Objection 5: Denial of Supplemental Jurisdiction Over Potential State Law Claim

Fifth and finally, Plaintiff objects to the Magistrate Judge's recommendation to decline exercise of supplemental jurisdiction over a potential state law claim. Plaintiff mentioned RCW 72.09.135 as being violated in her complaint, alongside federal constitutional provisions. *See* Dkt. No. 56 ¶¶ 108–68. However, when a federal court dismisses all federal claims in a case, it cannot retain jurisdiction over any remaining state law claims. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

The Court makes no judgment regarding Plaintiff's allegations about how she has been treated in prison. As explained in this Order, the Court only finds that Plaintiff has failed to present issues of material fact sufficient to survive summary judgment of her federal legal claims.

## IV.  CONCLUSION

For the above reasons, the Court hereby ORDERS that:

(1) The Report and Recommendation is ADOPTED;

(2) Plaintiff's objections are OVERRULED;

(3) Plaintiff's motion for summary judgment is DENIED;

(4) Defendants' motion for summary judgment is GRANTED;

(5) Plaintiff's claims against the Doe Defendants are DISMISSED WITHOUT PREJUDICE;

(6) Plaintiff's 42 U.S.C. § 1983 claims against all remaining defendants are DISMISSED WITH PREJUDICE;

(7) To the extent Plaintiff purports to bring a claim pursuant to RCW 72.09.135, the Court DECLINES to exercise supplemental jurisdiction over that claim; and

(8) This case SHALL BE CLOSED.

Dated this 25th day of January 2023.

Tana Lin
United States District Judge